UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATTY KYLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-3727 |
| | § | |
| NALCO ENERGY SERVICES LP, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendant Nalco Company's[1] ("Nalco") motion for summary judgment (Doc. 13), as well as Plaintiff Patty Kyle's ("Kyle") response (Doc. 14), and Defendant's reply (Doc. 15). Upon careful review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion should be granted.

I. Background and Relevant Facts

This is a race discrimination in employment case. Plaintiff Kyle, an African-American, brings suit for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* (Doc. 1, ¶ 5.) Defendant Nalco provides water treatment services. (Doc. 13 at 9.) Kyle worked for Nalco from February 28, 2003 until August 28, 2008, when she was fired. (*Id.* at 3, 12.) Kyle alleges that racial discrimination was the true reason she was fired and that she was terminated in retaliation for opposing the alleged discrimination. (Doc. 1, ¶¶ 10–14.) Nalco responds that Kyle was fired not because of her race or as a form of retaliation, but because of her "long-standing, well-documented, and undisputed poor job performance and

---

[1] Plaintiff sued the wrong company. Plaintiff was actually employed by Nalco Company. (Doc. 13 at 7.)

her repeated failure to work a full 7.5 hour day . . . ."  (Doc. 13 at 7.)

Kyle began working for Nalco as a clerical specialist in the indirect procurement sub-group of the procurement department on February 28, 2003.  (Kyle Deposition, Doc. 13-1 at 6, 8.)  As a clerical specialist, Kyle was responsible for purchasing supplies and services for the Sugar Land manufacturing plant and ten other Nalco locations in North America.  (*Id.* at 8.)  As part of her job, Kyle was obligated to cultivate working relationships with the managers and employees of the Sugar Land manufacturing plant and to assist them with their purchasing needs. (*Id.*)  By August 2003, Kyle was the only person in the procurement department in Nalco's Sugar Land location.  (*Id.* at 9.)

In March 2004, Kibry Krischke ("Krischke"), Kyle's supervisor, gave Kyle her performance review for 2003, with an overall rating of "Met Expectations."  (*Id.* at 30.)  Don Newman, a white man, took over as Kyle's direct supervisor in 2004.  (*Id.* at 31.)  In March 2005, Kyle again received an overall rating of "Meets Expectations" for the 2004 calendar year. (*Id.*)  In her self-assessment, Kyle wrote, "I will try to better my relationship[s] at the [Sugar Land] manufacturing plant."  (*Id.*)

On June 1, 2005, Kyle was moved to the maintenance office of the Sugar Land manufacturing plant.  (*Id.* at 12–13.)  Three other permanent employees worked in the maintenance office, all of whom were white.  (*Id.* at 13.)

On January 19, 2006, Phil Balsamo ("Balsamo"), Kyle's new supervisor, gave Kyle a rating of "Partially Meets Expectations"—the second lowest rating.  (*Id.* at 36–38.)  In her performance review, Kyle expressed interest in moving out of the procurement department to a different area at Nalco.  (*Id.* at 37.)  Later that same day, Kyle reported Fretitia Young, an African-American man, for "harassing" her.  (*Id.* at 32, 37, 39; Doc. 13 at 5.)  Kyle admits that

Fretitia Young's harassment was not based on race.  (Kyle Deposition, Doc. 13-1 at 39.)  Kyle complained that Fretitia Young "was aggravating her and rubbing in the fact she had to move to the plant" and that he "was coming into [her] office all the time when [she was] trying to do [her] job [and] interrupting [her]."  (*Id.* at 33, 39.)  Nalco conducted interviews and a follow-up meeting regarding Kyle's complaint.  (*Id.* at 32–33.)  Kyle signed the minutes from the follow-up meeting admitting "she had overreacted and misused the term 'harassed.'"  (*Id*. at 33.)

In February 2006, Kyle participated in a teleconference with Krischke and Balsamo during which they expressed displeasure with Kyle's attitude and job performance.  (*Id*. at 38.)  In a follow-up e-mail, Krischke wrote that they "discussed the importance of having people in Procurement that enjoy their work and the impact an unhappy employee has on the team and other associates in the work environment."  (*Id.*)  Krishke and Balsamo gave Kyle a six-month period to seek a different position outside of the procurement department, which she had indicated a desire to do in both her performance review and the teleconference.  (*Id*. at 37–38.)  Krischke noted, "[m]y expectation after the six months is that you will either have redeployed into a position that is more suitable to you or have a change in attitude, committing to your current role in Procurement in a manner that meets or exceeds expectations."  (*Id.* at 38.)

Around March 2007, Jeff Heimerdinger ("Heimerdinger") took over as Kyle's supervisor.  (*Id*. at 44.)  Kyle's work schedule at Nalco had always been Monday through Friday, from 8:00 a.m. to 4:30 p.m., with a thirty-minute lunch period and two fifteen-minute breaks.  (Kyle Deposition, Doc. 13-2 at 45–46.)  On June 26, 2007, Heimerdinger issued a final written warning to Kyle after a random audit of Kyle's work hours revealed that she was failing to work the required hours.  (Doc. 13-3 at 88.)  In the memorandum, Heimerdinger listed the following examples from the computerized time logs of Kyle's failure to work the required hours:

1. 2/22/07 – In 9:18:45AM, Out 11:55:30AM, In 2:28:23PM, Out 3:57:48 (Total 3 hours 56 minutes at work with 2 hour 21 minute lunch)
2. 3/7/07 – In 9:17:40AM, Out 12:11:46PM, In 2:32:18PM, Out 4:36:44 (Total 4 hours 58 minutes at work with 2 hour 29 minute lunch)
3. 3/19/07 – In 9:14:36AM, Out 11:41:30AM, In 2:10:05PM, Out 4:29:29PM (Total 4 hours 46 minutes at work with 2 hour 29 minute lunch)
4. 3/29/07 – In 10:03:56AM, Out 11:41:54AM, In 1:38:40AM, Out 3:23:30PM (Total 3 hours 23 minutes at work with 1 hour 57 minute lunch)
5. 4/13/07 – In 9:35:47AM, Out 1:08:18PM, In 2:28:30PM, Out 4:14:09PM (Total 5 hours 19 minutes at work with 1 hour 20 minute lunch)

(*Id.*)   Kyle does not dispute these time records.   (Kyle Deposition, Doc. 13-2 at 46.) Heimerdinger also warned Kyle that "[a]s discussed, this is a very serious violation of Nalco policy, which will not be tolerated going forward.  This memo serves as your final warning as further instances of this nature may result in immediate termination." (Doc. 13-3 at 88.)

In July 2007, Kyle complained that her work area in the maintenance office contained rat droppings and rat urine and that the smell was making her sick.  (Kyle Deposition, Doc. 13-2 at 59.)  Six days later, Heimerdinger moved Kyle to another area of the Sugar Land manufacturing plant.  (*Id.*)  The other maintenance office employees, who were all white, remained where they were.  (Kyle Deposition, Doc. 13-1 at 13.)  Kyle sent an e-mail to Heimerdinger on July 31, 2007 stating that "[t]his letter is to express my appreciation for moving me to a new location.  As a result of being moved, I am now happier and healthier." (Kyle Deposition, Doc. 13-2 at 52.)  On the same day, Kyle asked Heimerdinger whether she could start work after 8:00 a.m. when delayed because of traffic, so long as she worked a full day.  (*Id.* at 51.)  Heimerdinger agreed. (*Id.* at 51–52.)

In April 2008, Heimerdinger gave Kyle an overall rating of "Does Not Meet Expectations," the lowest rating, "for achieving only $68,000 out of a goal of $175,000 validated savings; for not developing relationships where she could be trusted to prepare purchase orders for several plant locations; and for her poor attendance in 2007."  (*Id.* 59–60; Doc. 13-3 at 13.)

Heimerdinger and Mark Jenny ("Jenny"), who was taking over as Kyle's supervisor, participated in the April 2008 conference call with Kyle regarding her performance.  (Kyle Deposition, Doc. 13-2 at 59.)  Kyle testified that she never thought Heimerdinger was racist and that Jenny "was easy to talk to, had a pleasant demeanor, listened to her, and did not exhibit any signs that he was 'out to get' her."  (*Id.* at 49, 65–66; Doc. 13 at 15.)

On July 18, 2008, Jenny wrote a memorandum to the human resources department entitled "Patty Kyle Mid year Status," which evaluated Kyle's mid-year progress.  (Doc. 13-3 at 21.)  In the memorandum, Jenny noted Kyle's failure to work a full day and failure to complete a single savings project, as well as her poor reviews from some of the management in the Sugar Land manufacturing plant.  (*Id*. at 21–22.)  Kyle had failed to work the required hours forty-two out of the fifty-four-day period of March 3 to March 29, 2008, despite the previous warning that failure to comply with Nalco's workday policy might result in termination.  (*Id.* at 21.)

Based on the issues set out in Kyle's 2007 performance review and Jenny's memorandum, Paul Storc ("Storc"), a global human resources business partner at Nalco, was asked to prepare a recommendation to terminate Kyle's employment for poor performance.  (Jenny Affidavit, Doc. 13-3 at 42.)  Storc sent his recommendation for termination to Alenda Young, Nalco's Senior EEO Specialist.  (Alenda Young Affidavit, Doc. 13-3 at 1–2.)  Alenda Young is an African-American woman whose job it is to review termination recommendations to ensure they are "fair and nondiscriminatory, in compliance with Nalco policy, and that the basis for the termination is well justified."  (*Id.* at 2; Doc. 13 at 10.)

In order to confirm that Kyle had failed to develop relationships where she could be trusted to prepare purchase orders for the eleven manufacturing plants she served, Alenda Young contacted Paul Storec and asked him to confer with Jenny to obtain proof of that allegation.

(Alenda Young Affidavit, Doc 13-3 at 3.)   She received e-mails from Jeremy Alberty ("Alberty"), a materials/logistics manager with Nalco in Sugar Land, and Michael Koma ("Koma"), a production superintendent.   Alberty's e-mail stated:

> My involvement with Patty Kyle has been very limited which in itself is an example of her approach to her job.  I compare my working relationship with Patty to the one I had with Sandy Weingartner while I worked at the Ellwood city plant.  To even compare the two of them is an injustice to Sandy.  I worked with Sandy daily on corrective action and vendor issues while in EC; during my time thus far in SL I handle all of these issues myself.  There is absolutely no comparison.  I believe that Patty does not understand her role or is incapable of filling that role.  I as most employees of the Sugar land [sic] plant use her only to enter PO's for expense items.  She will not follow up on PO acceptance or delivery information once the PO is placed and truthfully I would not trust her to do so even if she did.

(*Id.* at 4.)  Koma's e-mail stated that Kyle:

> [s]eems to do the minimum to get by.  In multiple cases it has taken several reminders from members of my group just to get the job done.  Especially, if she feels the task is beneath her.  She has proven difficult to deal with for much of my staff, to the point that they would rather not deal with her and go around if possible.  I have had several conversations with my staff to calm them down in a sense after their attempts to work with her.  Finally, there just does not seem to be anything proactive in her work.

(*Id.*)

Alenda Young verified that it was fair to hold Kyle accountable for the $175,000 savings goal, which represented an increase from the year prior.  (Alenda Young Affidavit, Doc. 13-3 at 4; Kyle Deposition, Doc. 13-2 at 61.)  For 2007, Kyle achieved $68,000 in validated savings. (Kyle Deposition, Doc. 13-2 at 62.)  Alenda Young determined that the three other employees in the same role as Kyle, Terry Bourgeois ("Bourgeois"), Cindy Foss ("Foss"), and Melissa Dami ("Dami"), had all achieved their $175,000 savings goals.  (Alenda Young Affidavit, Doc 13-3 at 4.)  Bourgeois and Foss surpassed their $175,000 savings goal for 2007, saving $225,000 and $327,000 respectively.  (*Id.* at 5.)  Dami was excused from meeting her goal by David Timm, the

global director of indirect procurement, because of family and personal health issues.   (*Id.*) Although Kyle's job differed slightly from that of Foss and Dami, her job was exactly the same as Bourgeois' job.  Both Kyle and Bourgeois worked at Nalco's largest plants.

On August 26, 2008, Alenda Young and Karen Murphy, a human resources manager, approved Storc's recommendation to terminate Kyle.  (*Id.*)  Nalco terminated Kyle on August 28, 2008.  (Kyle's Deposition, Doc. 13-1 at 70.)

On August 29, 2008, Kyle filed a complaint with the Texas Workforce Commission Civil Rights Division, asserting race and age discrimination, but not retaliation.  (EEOC Charge, Doc. 13-3 at 76.)  On September 28, 2008, the EEOC issued Kyle notice of her right to sue.  (Doc. 13-3 at 79.)  Kyle filed suit on December 23, 2008, alleging race discrimination and retaliation. (Doc. 1.)  Defendant Nalco now moves for summary judgment.  (Doc. 13.)


II.  Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless

of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323–24.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).  The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

## III.  Discussion

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of race discrimination based on circumstantial evidence are analyzed under the burden-shifting framework outlined in *McDonnell Douglas v. Green*. 411 U.S. 792 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of employment discrimination. *Davis*, 383 F.3d at 316. This burden is one of production and not of persuasion. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). To establish a *prima facie* case, the plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were treated more favorably. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). The defendant's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original). If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Id.* (citing *Hicks*, 509 U.S. at 510–11). In order to

survive summary judgment, the plaintiff must then introduce evidence showing either that (1) defendant's articulated reason was pretextual, or that (2) plaintiff's protected characteristic was a motivating factor in the decision.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

If the employer's proffered reason for the adverse treatment is pretextual, then it is appropriate to sustain a judgment for the plaintiff, unless the demonstration of falsity so strongly leads to the conclusion that the real reason was unrelated to discrimination.  *Id.* at 147.  "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reasons for its decision."  *Id.* at 148; *c.f. Furnco Constr. Corp. v. Waters*, 428 U.S. 567, 577 (1978) ("When all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based [it's] decision on an impermissible consideration.").

Although the intermediate evidentiary burdens shift back and forth, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Reeves*, 530 U.S. at 143 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence supporting the employer's case that may properly be considered for summary judgment.  *Reeves*, 530 U.S. at 148–49.

With respect to the fourth requirement of a *prima facie* case, Kyle cannot show that she

was replaced by someone outside her protected class.  In her complaint, Kyle asserts that she was replaced by a younger, white woman.  (Doc. 1, ¶ 9.)  However, Kyle's unsubstantiated and subjective beliefs are inappropriate summary judgment evidence.  Kyle fails to proffer any evidence in support of this assertion.  In her deposition testimony, Kyle claims that Nalco hired four other people in the procurement department after her termination but admits she does not know their races.  (Kyle Deposition, Doc. 13-1 at 17.)  Specifically, Kyle believes that a man named Mark Minor took over her job in Sugar Land procurement department but concedes that she does not know his race.  (*Id.* at 16.)

In work-rule violation cases, the Fifth Circuit permits plaintiffs to establish a *prima facie* case by demonstrating that they either did not violate the work rule or that others outside the protected class violated the same work rule and were treated more favorably.  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

Kyle clearly violated a work rule.  As illustrated by Nalco's time logs, Kyle repeatedly failed to work a full day.  (Doc. 13-3 at 21, 88.)  Kyle does not dispute that she failed to work the required hours.  (Kyle Deposition, Doc. 13-1 at 46.)  Indeed, despite receiving the 2007 warning from Heimerdinger that failure to work the required hours "is a very serious violation of Nalco policy, which will not be tolerated going forward" and that "further instances of this nature may result in immediate termination," another audit determined that Kyle failed to work the required hours forty-two out of the fifty-four-day-period from March 3 to March 29, 2008.  Kyle concedes that she was familiar with Nalco's policy regarding the hours she was required to work and that, by failing to work the required hours, she was not meeting Nalco's expectations.  (Kyle Deposition, Doc. 13-1 at 53.)  Kyle also does not present any evidence that others outside the class violated the same work rule and were treated more favorably.  Therefore, under either

approach, Kyle fails to establish a *prima facie* case of racial discrimination.

Even assuming, *arguendo*, that Kyle could establish a *prima facie* case, she would still have to show that Nalco's proffered reasons for her termination, unsatisfactory job performance and repeated failure to work the required hours, are false. *See Reeves*, 530 U.S. at 143. Giving full credence to Kyle's scant summary judgment evidence, there is nothing to demonstrate that Nalco's proffered reasons for firing Kyle are false or mere pretext. Kyle's subjective opinions do not support an inference of discrimination and are unavailing as summary judgment review. *See, e.g., Bauer*, 169 F.3d at 967 (noting that the Fifth Circuit "has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief.")

Nalco fired Kyle after she repeatedly violated company policy by failing to work the required hours. Kyle was aware of this policy and received several warnings. Despite recognizing the importance of maintaining positive working relationships in her self-assessments, Kyle failed to cultivate rapport with the employees of the Sugar Land manufacturing plant, as required by Nalco. Finally, Kyle did not meet her savings goal in 2007. Other similarly-situated employees were held to the same standard and managed to meet and surpass their goals. These employees also managed to work full days and develop business connections with their assigned plants.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "Exhaustion occurs when an individual files a timely complaint with Equal Employment Opportunity Commission (EEOC), her claim is dismissed by that agency, and the agency informs her of her right to sue in federal court." *Hall*

*v. Continental Airlines, Inc.*, 252 Fed. Appx. 650, 653 (5th Cir. 2007) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)).   "The scope of the employee's judicial complaint regarding the employer's Title VII violation is limited by the scope of the *EEOC investigation* which can reasonably be expected to grow out of the charge of the discrimination." *McClain*, 519 F.3d at 274 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)) (internal quotations omitted) (emphasis in original).   "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."   *McClain*, 519 F.3d at 273.

Nalco raises the affirmative defense that Kyle's retaliation claim is barred because she failed to exhaust her administrative remedies before seeking judicial relief.   (Doc. 6 at 3; Doc. 13 at 8.)   Kyle failed to assert retaliation in her EEOC charge, but now alleges retaliation in this lawsuit.   (Doc. 13-3 at 76.)   The Court finds that Kyle failed to exhaust her mandatory administrative remedies for the retaliation claim and therefore this claim must be dismissed.   *See Teffera v. N Texas Tollway Auth.*, 121 Fed. Appx. 18, 21 (5th Cir. 2004) (holding that though plaintiff "checked 'retaliation' on the *pre-charge EEOC form*, he did *not* do so on the EEOC charge; there, he referenced only discrimination because of national origin.   The district court correctly dismissed [plaintiff's] Title VII retaliation claim for not exhausting it with the EEOC.") There are  no genuine issue of material fact regarding Nalco's reasons for terminating Kyle.

## IV.  Conclusion

Accordingly, the Court hereby ORDERS that Nalco's motion for summary judgment (Doc. 13) is GRANTED.

SIGNED at Houston, Texas, this 10th day of August, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE